UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MATTHEW ALLARD,<br>    *Plaintiff*,<br><br>    v.<br><br>ROUND ROBIN OPERATIONS, LLC *et al.*,<br>    *Defendants*. | No. 3:19-cv-01541 (JAM) |

**ORDER GRANTING MOTION FOR NOTICE**
**AND CONDITIONAL CERTIFICATION PURSUANT TO 29 U.S.C. § 216(b)**

Plaintiff Matthew Allard brings this Fair Labor Standards Act ("FLSA") collective action for unpaid overtime wages against defendants Round Robin Operations, LLC and Round Robin, LLC, nine of their Red Robin franchised restaurants, and the entities' manager Richard Sheldon. Allard, along with putative opt-in plaintiff Matthew Sanders, moves for conditional certification of this lawsuit as a collective action on behalf of all Assistant Managers ("AMs") who have worked for defendants since September 30, 2016, and for this Court to supervise notice to potential opt-in plaintiffs pursuant to FLSA, 29 U.S.C § 216(b). I will grant the motion.

**BACKGROUND**

The following facts are undisputed unless otherwise noted. Red Robin Gourmet Burgers, Inc. advises all its franchisees on management training, directly provides training to new managers, and shares best operating practices with all its franchisees.[1] Round Robin, LLC's Chief Operating Officer ("COO") oversees operations at all nine of the defendant-restaurants and enforces compliance with the company's best practices. Doc. #21-1 at 1-2 (¶¶ 2, 5), 4 (¶ 14).

---

[1] *See* Red Robin Gourmet Burgers, Inc., Annual Report (Form 10-K) (Dec. 30, 2018), https://www.sec.gov/Archives/edgar/data/1171759/000117175919000012/rrgb-20181230x10k htm [https://perma.cc/VL7L-XNXS].

1

Each restaurant employs a General Manager ("GM"), an Assistant General Manager ("AGM") and/or Kitchen Manager ("KM"), and at least one AM. *Id.* at 2 (¶ 5). The AM position is the lowest level management position at the restaurants, but is uniformly classified and treated by Round Robin as a salaried position exempt from the FLSA's overtime provisions. Doc. #16 at 5.

Allard worked as an AM at two of the defendant-restaurants from May 16, 2016, to September 3, 2017, and Sanders worked as an AM at one of the same restaurants as Allard and trained at an additional defendant-restaurant from March 2016 to January 2017. Doc. #20-4 at 1 (¶ 2); Doc. #21-1 at 4 (¶ 15); Doc. #20-5 at 1 (¶ 2). They "regularly" worked over 40 hours per week but were never paid overtime. Doc. #20-4 at 2-3 (¶¶ 3, 12); Doc. #20-5 at 2-3 (¶¶ 3, 13). Allard and Sanders visited other Round Robin restaurants and attended trainings where they interacted with other AMs, and found that other AMs' situations were substantially similar to their own. Doc. #20-4 at 2-3 (¶¶ 4, 8-9, 11, 13-14); Doc. #20-5 at 2-3 (¶¶ 4, 9-10, 12-14).

In his complaint, Allard alleges that since September 30, 2016, defendants violated the FLSA by failing to pay AMs and similarly situated employees overtime. Doc. #1 at 11 (¶ 53). He says that despite their job titles, AMs have only limited supervisory responsibilities and instead spend much of their time engaged in non-exempt menial tasks. *Id.* at 8-9 (¶¶ 39-42). According to Allard, defendants knowingly or recklessly failed to pay their non-exempt employees the additional wages required to complete all necessary manual labor, and instead resorted to using AMs to fill in the gaps in order to avoid paying overtime. *Id.* at 9 (¶ 45).

Allard now moves to conditionally certify a class pursuant to the FLSA, 29 U.S.C. § 216(b), consisting of all current and former salaried managers below the level of AGM and KM as well as all similarly situated current and former employees who were employed by Round Robin in the United States since September 30, 2016. Doc. #20 at 1-2.

Defendants oppose conditional certification on the ground that Allard has failed to make a modest factual showing that they violated the FLSA by misclassifying AMs as exempt executive employees. Doc. #21 at 4-9. They also argue that Allard's proposed notice is misleading and propose changes in the event that certification is granted. *Id.* at 9-14.

## DISCUSSION

Congress enacted the Fair Labor Standards Act to "protect workers and ensure that they are not subjected to working conditions 'detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 243 (2d Cir. 2011) (quoting 29 U.S.C. § 202(a)). In furtherance of this goal, the FLSA imposes numerous "wage and hour" requirements, including an overtime provision mandating employers to pay non-exempt employees time-and-a-half for each hour worked in excess of 40 hours per week. *See* 29 U.S.C. § 207(a)(1).

Section 16(b) of the FLSA not only authorizes an employee to bring a private cause of action on his own behalf but also allows an employee to bring a "collective action" on behalf of similarly situated employees. *See* 29 U.S.C. § 216(b); *Shahriar*, 659 F.3d at 243-44. Unlike a Rule 23 class action in which putative class members must opt *out* in order to remove themselves from the class, a FLSA collective action requires employees to affirmatively opt *in* to the case in order to join the collective action group. 29 U.S.C. § 216(b). A district court in turn has discretion to facilitate notice to potential opt-in plaintiffs of the pendency of the action and their opportunity to join as plaintiffs. *See Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010).

### *Conditional certification*

The Second Circuit has described a two-step process for district courts to evaluate the certification of collective actions under the FLSA. At the first step, the court decides whether to

3

send notice of the lawsuit to potential opt-in plaintiffs by considering whether the named plaintiffs have made a "modest factual showing" that they and the potential opt-ins "together were victims of a common policy or plan that violated the law." In a FLSA exemption case, named plaintiffs need only show that they and the potential opt-ins are "similarly situated with respect to their job requirements and with regard to their pay provisions" and are "classified as exempt pursuant to a common policy or scheme." Although "unsupported assertions" will not suffice to make this showing, the standard of proof "should remain low" because "the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.* at 555 (cleaned up).

At the second step, the court considers the "fuller record" from the parties' discovery in order to determine "whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." If so, a "collective action" may proceed. If not, the action may be "de-certified," and "the opt-in plaintiffs' claims may be dismissed without prejudice." *Ibid.*

The parties' dispute at this first step of the certification process stems from ambiguities in the *Myers* standard. Defendants highlight the language in *Myers* that named plaintiffs must show that they and the potential opt-ins "were victims of a common policy or plan *that violated the law*," and that Allard's declarations do not show that he and the potential opt-in were subject to a common policy that improperly classified them as bona fide executive employees, who are exempt from the FLSA's overtime provisions. Doc. #21 at 2-9. But Allard notes that plaintiffs can meet their burden in a case like this merely by showing that they and the potential opt-ins are "similarly situated with respect to their job requirements and with regard to their pay provisions" and are "classified as exempt pursuant to a common policy or scheme." Doc. #23 at 8-9. I need

4

not resolve this dispute because Allard has made a modest factual showing that he and the potential opt-ins were not exempt executive employees under the FLSA.

The FLSA exempts from its overtime provisions "any employee employed in a bona fide executive capacity," as that term is defined in the Department of Labor regulations, except that an employee of a service establishment cannot be excluded from executive employee status simply because he engages in non-executive activities if those activities comprise less than 40% of his hours in the workweek. 29 U.S.C. § 213(a)(1). The applicable regulations specify that a bona fide executive employee (1) is paid a salary of at least $684 per week, (2) his "primary duty is management," (3) he "customarily and regularly directs the work of two or more other employees," and (4) he "has the authority to hire or fire other employees" or his suggestions as to hiring, firing, and advancement are "given particular weight." 29 C.F.R. § 541.100(a).

The applicability of the FLSA's executive exemption "turns on the 'primary duty' of an employee." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502 (2d Cir. 2020). According to the Department of Labor regulations, an employee's "primary duty" is "the principal, main, major or most important duty that the employee performs," and is determined "based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a). Although employees who spend the majority of their time performing exempt work "will generally satisfy the primary duty requirement," employees who spend the minority of their time performing exempt duties "may nonetheless meet the primary duty requirement if the other factors support such a conclusion." *Id.* § 541.700(b).

The parties' principal factual dispute is whether the AMs' primary duty at the defendant-restaurants was exempt managerial work or non-exempt manual labor. Allard and Sanders have declared that based on their experiences at three of the defendant-restaurants and the experiences

shared by AMs at other defendant-restaurants, "[t]he job duties of the AM positions are primarily to provide customer service and assist in providing the food, beverage and restaurant service experience that Round Robin sells to its customers." Doc. #20-4 at 3 (¶ 14); Doc. #20-5 at 3 (¶ 14). They submit that they "frequently" did manual labor as a result of a company policy of understaffing hourly-paid workers and using AMs to perform their tasks instead. Doc. #20-4 at 2-3 (¶¶ 9-10, 14); Doc. #20-5 at 3 (¶¶ 9-11, 14).

Defendants do not contest the sufficiency of Allard and Sanders's declarations, except insofar as they do not show Allard and AMs' primary duty was the performance of non-exempt manual labor. Defendants also seek to rebut the declarations, with their COO averring that AMs are "primarily hired" for and "engage in" managerial duties such as training and directing employees, but that AMs "often perform many of the duties performed by non-management employees" such as cooking and cleaning. Doc. #21-1 at 2-4 (¶¶ 8-13). Under the loose definition of "primary duty" in the DOL regulations, I conclude that Allard and Sanders's declarations make a modest showing, if only barely, that Allard and the potential opt-ins were subject to a common policy that resulted in their "primary duty" comprising non-exempt work.

Accordingly, Allard and the potential opt-in plaintiffs are "similarly situated" for FLSA purposes, and I will conditionally certify this case as a FLSA collective action. The collective group to receive notice shall be comprised of all persons employed as AMs in the three years prior to the date Allard filed his complaint.

*Notice*

The Court has previously approved a notice in *McArthur v. Edge Fitness, LLC*, 2018 WL 3302591 (D. Conn. 2018). Defendants do not contest Allard's proposed notice procedures or

consent-to-join form, only the substance of his proposed notice. Doc. #21 at 9-14. The Court has considered defendants' objections and will separately docket an approved notice.[2]

## CONCLUSION

For the foregoing reasons, the Court GRANTS Allard's motion for conditional certification of a FLSA collective action (Doc. #20). The notice period—that is, the period during which individuals may "opt in" to the FLSA collective action—shall begin on Monday, September 14, 2020, and conclude on Friday, November 13, 2020.

It is so ordered.

Dated at New Haven this 31st day of August 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[2] Allard is, of course, welcome to insert applicable URLs where the notice provides space for their insertion.